**Douglas ROBBINS and Thomas Shelor, Appellants,**

v.

**McDONNELL DOUGLAS CORPORATION and McDonnell Douglas Technical Services Company, Respondents.**

**No. ED 77233.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 19, 2000.

Jerome J. Dobson, Gregory A. Rich, St. Louis, for appellant.

Thomas C. Walsh, Dennis C. Donnelly, Daniel M. O'Keefe, St. Louis, for respondent.

LAWRENCE G. CRAHAN, Judge.

Douglas Robbins and Thomas Shelor ("Employees") appeal the summary judgment entered in favor of Defendants McDonnell Douglas Corporation ("MDC") and McDonnell Douglas Technical Services Company ("MDTSC") (collectively, "Defendants") in their action alleging breach of contract. We reverse and remand.

The material facts are not in dispute. In the early 1990's, MDC laid off about 25% of its workers in the St. Louis area. Shortly thereafter, the Equal Employment Opportunity Commission ("EEOC") filed suit in federal court alleging that, in implementing this force reduction, MDC had unlawfully discriminated against employees who were age 55 or older in violation of the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 *et. seq.* MDC and the EEOC ultimately settled that suit by agreeing to a Consent Decree which required MDC to rehire about 200 former employees, either directly or through its subsidiary, MDTSC. The Consent Decree further required, *inter alia,* that MDC of-

fer the affected employees employment with either MDC or MDTSC[1] for a guaranteed term of at least 4 years with a salary at least equal to their last salary with MDC.

Employees are two of approximately 200 workers who were offered contracts of reemployment pursuant to the terms of the Decree.[2] The contracts, which are essentially identical except for the rate of hourly compensation, provide in pertinent part:

### CONTRACT LABOR EMPLOYMENT AGREEMENT—CONSENT DECREE

THIS EMPLOYMENT AGREEMENT ("Agreement") is entered into by and between *[Name]* ("Employee", "YOU", "YOUR") and McDonnell Douglas Technical Services Company ("MDTSC," "WE", "OUR", "US"). In consideration of the mutual promises herein, the parties hereto agree as follows:

1. **Duties and Responsibilities.** MDTSC desires to employ YOU and YOU desire to be employed by MDTSC for the purpose of providing temporary technical services to MDTSC's client, *[Named MDC Division]* ("CLIENT").

2. **Term.** The term of this Agreement shall be a minimum of four (4) years, measured from YOUR start date, or until terminated as provided for in Paragraph 9.

3. **Offered Work.** During the term of this agreement YOU will be offered at least forty (40) hours of work each

---

1. The affected employees were permitted to express a preference for employment with MDC or MDTSC. Employment by MDTSC would permit employees receiving MDC pensions to continue collecting their pensions during their period of reemployment by MDTSC.

2. The petition alleges that all of the affected workers were offered identical contracts except for the hourly compensation rate and

alleged that the action should properly be certified as a class action. Although Employees moved to have the matter certified as a class action, there is no indication in the record that the trial court ever ruled on the motion. Inasmuch as neither party takes issue with the trial court's inaction on appeal, we need not address whether the matter should have been certified as a class action.

week. Offered work notwithstanding, YOU will be paid only for time actually worked.

4. **Base Compensation.** In consideration of the services which YOU render under this agreement, WE will pay YOU as described below. Except as specified in Paragraph 3[sic] following, WE will pay YOU only for time worked as evidenced by a timecard signed by YOU and an authorized CLIENT representative.

$ [*Amount*] for each of the first 40 hours worked in any workweek ("straight time"). A workweek is Monday through Sunday.

$ [*Amount*] for each hour worked in excess of 40 in any workweek ("overtime").

5. **Additional Compensation.** Any and all other compensation in addition to the Base Compensation specified in Paragraph 4 above for which YOU are eligible is provided in the Attachments listed following:

Attachment H – Holiday Pay, Attachment V – Vacation Pay

* * * *

Attachment H – Holiday Pay, provides in pertinent part:

MDTSC celebrates six (6) holidays each year:

| | |
|---|---|
| –New Years's Day | –Labor Day |
| –Memorial Day | –Thanksgiving Day |
| –Independence Day | –Christmas Day |

... WE will pay YOU Holiday Pay at your straight-time pay rate for each of the above holidays as they occur ... If YOU are eligible for Holiday Pay and YOU work on a holiday, YOU will receive regular pay for all hours worked, in addition to Holiday Pay. If a client celebrates a holiday which is not one of the above-designated MDTSC holidays, and YOU therefore do not work, YOU will *not* be paid for that day.

In their petition, Employees claim that MDC and MDTSC breached the foregoing agreement by failing to offer them at least 40 hours of work during any of the weeks in which a MDTSC or MDC holiday occurred. Although Employees do not claim that they were not paid for the six recognized MDTSC holidays specified in Attachment H, they claim that Defendants were nonetheless required by the express terms of paragraph 3 of the agreement to offer them no less than 40 hours of work every week, including weeks in which a paid or unpaid holiday occurred. Employees sought money damages for the compensation they could have earned if they had been offered 40 hours of work every week and injunctive relief.

In their answer, Defendants denied that they had breached the agreement and alleged that the language "YOU will be offered at least forty (40) hours of work each week" was ambiguous when viewed in the total context in which the offer was made. Defendants further alleged that such language constituted a latent ambiguity and that Attachment H set forth the true intent of the parties with respect to any and all MDC holidays, which was that no work was contemplated on the 13 days each year when normal operations of MDC are shut down. Defendants prayed that the contract be reformed to express such mutual intent.

After both sides engaged in discovery, Defendants moved for summary judgment or, in the alternative, for reformation of the contracts. Defendants first urged that the contracts were not ambiguous. Specifically, Defendants claimed that the general provision in paragraph 3 requiring Defendants to offer 40 hours of work per week was overridden by the more specific language in Attachment H pertaining to holidays.

In the alternative, if the contracts were deemed to be ambiguous, Defendants claimed that extrinsic evidence confirmed that the purpose of the language in paragraph 3 was solely to satisfy the requirement of the Consent Decree that the affected employees be afforded the

opportunity to earn at least as much as they had earned as MDC employees and under similar conditions. In support of this assertion, Defendants submitted the affidavit of H. Juanita Beecher, an in-house attorney who participated in drafting the contracts at issue. According to Ms. Beecher, it had been the practice at MDC that non-Consent Decree MDTSC contract employees worked on an as-needed basis and were not necessarily provided full-time work. Ms. Beecher thus prepared the language requiring Defendants to offer at least 40 hours of work per week in order to help ensure compliance with the Consent Decree requirements that the affected employees be compensated at least as highly as they had been before the layoffs and under similar working conditions. Ms. Beecher further attested that, in compliance with the Decree, all of the affected employees were offered sufficient work such that they had the opportunity to earn as much or more as in their previous employment or they were paid a pay differential make-up amount to cover any shortfall. Also, after negotiations between MDC and the EEOC, it was agreed that the affected employees would only receive Holiday Pay for the six holidays celebrated by MDTSC.

As yet another alternative, Defendants urged that Ms. Beecher's affidavit established that the intent of the parties was simply to comply with the purpose of the Consent Decree and that Holiday Pay should be governed by Attachment H. Thus, Defendants claimed, if paragraph 3 could be construed to require that the affected employees must be offered work even during plant shutdowns for holidays, such construction was the result of a scrivener's error not reflecting the true intent of the parties and paragraph 3 should be reformed.

In opposition to Defendants' motion, Employees Robbins and Shelor each submitted his own affidavit along with the deposition testimony of Linda Kluge, another MDC in-house attorney who served on the committee that was charged with implementing the Consent Decree and who signed the agreement with Mr. Shelor on behalf of MDTSC.

In their affidavits, Employees stated that when they signed their agreements with MDTSC, they believed they would be offered at least 40 hours of work each week, including those weeks in which the normal operations of MDTSC were shut down for one or more days due to a paid or unpaid holiday. They thought they would either be permitted to work on the holiday or that other arrangements would be made so that they could work 40 hours each week. Both stated that this did not occur and they were not offered at least 40 hours of work during the weeks in which a paid or unpaid holiday occurred.

Ms. Kluge testified in her deposition that Defendants' intent was that persons hired pursuant to the Consent Decree were to be offered at least 40 hours of work each week regardless of whether there was a paid or unpaid holiday during the week.

In a reply to Employees' opposition, Defendants submitted correspondence from Mr. Shelor and a subsequent contract signed by Mr. Robbins that Defendants argued were inconsistent with their affidavits as to their intent. The trial court sustained Defendants' motion without explanation.

■ In their first point, Employees claim the trial court erred in ruling on Defendants' motion for summary judgment on their breach of contract claim before ruling on their motion for partial summary judgment on Defendants' claim for reformation. We find no error. None of the cases cited by Employees involves summary judgment. The doctrine discussed in the cases cited by Employees exists to preserve a plaintiff's right to a jury trial for purely legal issues when the court finds the equitable issues raised are without substance. See, e.g., Jaycox v. Brune, 434

S.W.2d 539, 542–43 (Mo.1968). If summary judgment is appropriate, however, the plaintiff is not entitled to a jury trial because the defendant has been shown to be entitled to judgment as a matter of law. Rule 74.04(c)(3). The plaintiff thus cannot be prejudiced by the fact that the trial court reaches the dispositive issue first. Point denied.

■ In their second point, Employees urge that the trial court erred in granting Defendants' motion for summary judgment because a reasonable jury could find that Defendants breached the express terms of the agreements by failing to offer them at least 40 hours of work per week. The standard of review on appeal regarding summary judgment is essentially de novo. *ITT Commercial Fin. v. Mid–Am. Marine Supply Corp* ., 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria for testing the propriety of summary judgment are no different from that which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* Summary judgment will be upheld on appeal if there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. *Id.* The propriety of summary judgment is purely an issue of law. *Id.* Accordingly, "an appellate court need not defer to the trial court's order granting summary judgment." *Id.* The court will review the record in the light most favorable to the party against whom judgment was entered, and will accord the non-movant the benefit of all reasonable inferences. *Id.*

■ Interpretation of a contract is a question of law. *Hougland v. Pulitzer Publ'g Co.,* 939 S.W.2d 31, 33 (Mo.App. 1997). The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. *Peterson v. Continental Boiler Works, Inc.,* 783 S.W.2d 896, 901 (Mo. 1990). If a contract is not ambiguous, *i.e.,* when the contract terms are unequivocal, plain, and clear, the intent of the parties is determined from the contract alone and

the court is bound to enforce the contract as written. *Simul Vision Cable Sys. Partnership v. Continental Cablevision of St. Louis County, Inc.,* 983 S.W.2d 600, 604 (Mo.App.1999). To ascertain the intent of the parties to an unambiguous contract, we give the language used its natural, ordinary, and common sense meaning, and consider the entire contract, along with its object, nature and purpose. *Chehval v. St. John's Mercy Med. Ctr.,* 958 S.W.2d 36, 39 (Mo.App.1997).

■ An ambiguity does not exist merely because the parties dispute the meaning of the contract. *Id.* Rather, a contract is ambiguous when the terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms. *Id.* Further, we must give consideration to what the contract actually says and not what one party intended secretly. *Community Land Corp. v. Stuenkel,* 436 S.W.2d 11, 16 (Mo.1968).

■ Employees urge that the contracts unambiguously required Defendants to offer them at least 40 hours of work each week, regardless of whether a paid or unpaid holiday occurred during a given week. Employees point out that paragraph 3 of the contracts plainly and unambiguously provides that they were to be offered at least 40 hours of work each week. No other provision of the contract purports in any way to limit the number of hours of work Defendants were required to offer.

Defendants agree that the contract is not ambiguous but assert that the following language in Attachment H controls:

If YOU are eligible for Holiday Pay and YOU work on a holiday, YOU will receive regular pay for all hours worked, in addition to Holiday Pay. If a client celebrates a holiday which is not one of the above-designated MDTSC holidays, and YOU therefore do not work, YOU will not be paid for that day.

Defendants invoke the well-established rule that where one contract clause is general and inclusive and another is more limited and specific, the more specific clause acts to modify and pro tanto nullify the more general clause. *See, e.g., Tri–County Retreading, Inc. v. Bandag, Inc.,* 851 S.W.2d 780, 784 (Mo.App.1993); *In re Marriage of Buchmiller,* 566 S.W.2d 256, 259 (Mo.App.1978). According to Defendants, because holidays and the payment of wages for holidays are specifically addressed only in the Attachment H, that provision must be deemed to override paragraph 3 with respect to the treatment of holidays. We disagree.

Attachment H pertains to eligibility for Holiday Pay. Employees are not claiming they should have been paid Holiday Pay on the holidays celebrated by MDC but not MDTSC. Nor do Employees claim they did not receive Holiday Pay for the six holidays celebrated by MDTSC. Rather, Employees claim that paragraph 3 of the contract unambiguously requires that they be offered at least 40 hours of work every week, including those weeks in which a paid or unpaid holiday occurs. Nothing in Attachment H conflicts with this interpretation. Indeed, Attachment H specifically contemplates that work may be offered on a holiday. Moreover, Attachment H is incorporated into the contract by paragraph 5, which is entitled "Additional Compensation." If Attachment H were interpreted as Defendants urge, the effect would be to *reduce* Employees' compensation, not add to it, because Employees' hours would be reduced by 8 hours for each of the thirteen MDC holidays and they would only receive Holiday Pay on six of those days. Indeed, the only way Attachment H can yield "additional compensation" is if Employees work 40 hours every week, including weeks in which a holiday occurs. The six days of Holiday Pay for the holidays recognized by MDTSC would then constitute "additional compensation."

We agree with Defendants that it is appropriate to interpret the contract in light of the Consent Decree which gave rise to it. But the Consent Decree simply requires that Employees be given the opportunity to earn a salary "at least equal" to their last salary with MDC. Nothing in Employees' interpretation conflicts with that requirement. Defendants' interpretation apparently would not meet the requirements of the Consent Decree. According to Ms. Beecher's affidavit, Defendants found it necessary to pay a differential make-up amount, not required by the terms of the contract itself, to satisfy its obligations under the Decree.

We hold that there is no conflict between Attachment H and paragraph 3 and that paragraph 3 unambiguously required Defendants to offer Employees 40 hours of work each week, including those weeks in which a paid or unpaid holiday occurred.[3] Accordingly, the trial court erred in granting summary judgment for Defendants. The judgment in favor of Defendants is reversed and the cause is remanded for further proceedings consistent with this opinion.

GARY M. GAERTNER, P.J., Concurs.

GEORGE W. DRAPER III, J., Concurs.

---

**3.** Because the contract is not ambiguous, we need not discuss the extrinsic evidence submitted by the parties. We note, however, that Defendants failed to controvert Ms. Kluge's unequivocal deposition testimony that Employees' interpretation was, in fact, Defendants' intent. Nothing in Ms. Beecher's affidavit, prepared about a month later, contradicted that assertion.