Erlene GOELLNER, Appellant,

v.

GOELLNER PRINTING, Respondent.

No. ED 88627.

Missouri Court of Appeals, Eastern District, Division Three.

June 5, 2007.

Charles E. Taylor, St. Louis, MO, for appellant.

Joshua G. Knight, Claude C. Knight, St. Charles, MO, for respondent.

KENNETH M. ROMINES, Judge.

This case involves the interpretation of a provision in a retirement agreement. Erlene Goellner (Erlene) appeals the Judgment of the Circuit Court of St. Charles County, the Honorable Nancy L. Schneider presiding, which construed the retirement agreement against Erlene.

Erlene's husband, Glennon Goellner, and his twin brother, Clarence Goellner, each owned a 50% interest in Goellner Printing (GP). In anticipation of their retirement, each brother entered an Executive Compensation Agreement (Agreement) with GP on 14 February 1977. Paragraph 2 of the Agreement stated:

> The corporation shall also continue to provide the executive and his spouse with medical, hospitalization and life insurance coverage in such amounts and upon such terms as are provided or available under such group insurance plan or plans as are or shall in the future be provided to employees of the corporation. Nothing in this paragraph shall obligate or require the corporation to provide any such insurance which is not available through such group insurance plan or plans as are or shall in the future be provided to employees of the corporation. The corporation shall continue to provide such insurance coverage to the executive and his spouse for so long as they live, and shall take such actions as is necessary to qualify the executive and his spouse for such coverage.

When Glennon and Clarence retired in 1977, at age 63, Glennon's daughter and son-in-law, Joyce and Peter Mihelich, took his 50% interest, and Clarence's son William Goellner took his. When Glennon and Clarence turned 65, GP provided them

with supplemental Medicare insurance until they died. This insurance was not part of GP's group insurance plan for employees.

GP also provided the supplemental Medicare insurance to Erlene, until Joyce and Peter Mihelich sold their GP interest to William in 2004. This sale occurred because the relationship between Peter and William became "untenable." At this time, GP also stopped paying Erlene's health insurance. When asked why GP provided supplemental insurance for Erlene from 1979 to 2004, William replied: "The corporation continued to pay the supplemental insurance out of good will and family relations."

On 4 October 2005, Erlene filed a Petition for Declaratory Judgment and for Breach of Contract against GP, in which she asked the Court to declare that Paragraph 2 of the Agreement requires GP to provide her with insurance; to award her costs and attorney's fees; and to award her $4,091.40 for insurance premiums she paid in 2004 and 2005. On 25 July 2006, the Circuit Court found for GP, and held:

> ... the Court finds the Executive Compensation Agreement dated 2/14/77 does provide [GP] must provide medical insurance for [Erlene] upon such terms are [sic] provided or available under such group insurance plan(s) as are in force for [GP's] employees. The Court finds, however, that the Medicaid supplement plan for which [Erlene] is seeking reimbursement is not such a plan and [GP] is thus not obligated to provide or pay for this coverage, despite its having done so prior to 2004 on a voluntary basis.

On appeal, Erlene argues that the Court's interpretation of Paragraph 2 was inconsistent with 1) the clear meaning of that paragraph, and 2) principles of contract interpretation.

Interpretation of a contract is a question of law. *Robbins v. McDonnell Douglas Corp.*, 27 S.W.3d 491, 496 (Mo. App. E.D.2000). A contract is ambiguous when the terms are susceptible of more than one meaning, such that reasonable persons may fairly and honestly differ in their construction of the terms. *Id.* The language of Paragraph 2 is ambiguous. While it states: "[n]othing in this paragraph shall obligate or require the corporation to provide any such insurance which is not available through such group insurance plan ...", it also states that GP "shall take such actions as is necessary to qualify the executive and his spouse for such coverage." These phrases directly conflict and thus create an ambiguity.

When a contract is ambiguous, we may look beyond the contract to determine the parties' intent. *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d 359, 362 (Mo. banc 1991). The court will consider:

> ... the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties.

*Id.* GP provided Erlene with supplemental health insurance for more than twenty years, and abruptly terminated her insurance policy when the relationship between William and Erlene's son-in-law became "untenable." The decision to terminate Erlene's health insurance payments appears to have been done entirely out of spite. These circumstances lead us to conclude that the contracting parties intended for GP to provide Erlene with health insurance until her death. GP cannot aban-

don its contractual obligation merely because it no longer wishes to fulfill it.

Erlene also seems to argue that the Court addressed an issue that was not before it. Erlene claims that, in its Judgment, the Court implied that GP must provide Erlene with coverage equivalent to, but not necessarily from the group plan—but that a Medicare supplement is not the proper coverage. The Court interpreted Paragraph 2, as Erlene requested. We do not find error here.

Erlene also challenged the Court's failure to award her attorney's fees or damages. Section 527.100 RSMo (2000) states: "In any proceeding under sections 527.010 and 527.130 the court may make such award of costs as may seem equitable and just." However, "costs" do not automatically include attorney's fees. *Washington University v. Royal Crown Bottling Co. of St. Louis*, 801 S.W.2d 458, 468 (Mo.App. E.D.1990). In *Bernheimer v. First National Bank of Kansas City*, 359 Mo. 1119, 225 S.W.2d 745 (1949), the Court held that attorney's fees may be awarded in a declaratory judgment action when there are special circumstances. This exception is narrow, strictly applied, and does not apply every time two litigants maintain inconsistent positions. *Royal Crown Bottling Co.* at 469. We believe that special circumstances have been shown—after relying on GP to pay her health insurance premiums for more than twenty years, these payments were terminated, out of spite, and Erlene—92 years old at the time of trial—was forced to bring a declaratory judgment action. Erlene is entitled to the attorney's fees and costs she incurred in bringing this action.

The Judgment is reversed. GP is ordered to provide Erlene with health insurance until her death, as required by the Agreement, and to reimburse Erlene for the health insurance premiums she has paid since GP terminated her plan in 2004. We remand to the Circuit Court for a determination of an appropriate attorney's fees award, and the amount Erlene is owed in reimbursement for health insurance premiums.

GLENN A. NORTON, P.J. and LAWRENCE E. MOONEY, J., concur.