MORELOCK–ROSS PROPERTIES, INC., Appellant,

v.

ENGLISH VILLAGE NOT–FOR–PROFIT SEWER CORPORATION, Respondent.

No. SD 29868.

Missouri Court of Appeals, Southern District, Division One.

April 14, 2010.

Bryan O. Wade and Ginger K. Gooch, Husch, Blackwell, Sanders, L.L.P., Springfield, for Appellant.

Brian D. Malkmus and Jessica L. Kruse, Malkmus Law Firm L.L.C., Springfield, for Respondent.

ROBERT S. BARNEY, Judge.

Morelock–Ross Properties, Inc. ("Appellant") appeals the judgment and findings of fact of the trial court which found in favor of English Village Not–For–Profit Sewer Corporation ("Respondent") following a bench trial held on stipulated facts. In two points relied on, Appellant challenges the trial court's ruling that allowed Respondent to collect from Appellant a sewer hook-up fee and an impact fee as well as the trial court's determination as to the amount of the fees which could be collected because the amount set by the trial court was in contravention of certain limits set up by section 393.849.[1] We affirm the judgment and findings of the trial court.

■ "This case does not involve any issues of fact." *City of Kansas City v. Dudley*, 244 S.W.3d 762, 763 (Mo.App. 2008). "[W]hen a case is submitted on stipulated facts, as here, this Court must determine 'whether the trial court drew the proper legal conclusions from the facts stipulated.'" *Eisel v. Midwest BankCentre*, 230 S.W.3d 335, 337 (Mo. banc 2007) (quoting *Junior College Dist. of St. Louis v. City of St. Louis*, 149 S.W.3d 442, 446 (Mo. banc 2004)). We review questions of law *de novo*. *Eisel*, 230 S.W.3d at 338.

With the aforementioned standard of review in mind, the record reveals Appellant is a commercial and residential developer in Southwest Missouri and is the developer of Tuckaway Subdivision ("the Subdivision") which is located in Christian County, Missouri, near Nixa. Respondent is a nonprofit sewer company that provides sewage collection services to customers within a specific geographic area.[2]

In January of 2003, following a dispute between the City of Springfield, Missouri, ("the City"), the Missouri Department of Natural Resources,[3] and the Missouri Attorney General, the City "agreed to extend its wastewater pipeline from the Southwest Wastewater Treatment Plant to serve ..." Respondent's geographic area. This "Settlement Agreement" ("the Settlement Agreement") was entered into on January 13, 2003, and required, in part, that Respondent pay to the City a "customary impact fee" of $97,400.00 for the existing users within Respondent's area. It further provided that Respondent would then collect "all fees and charges for sewer services charged by [the City] to its customers and [the City] shall provide [Respondent's users] with the same sewer services as all other customers of [the City]."

Thereafter, on August 28, 2003, the City and Respondent entered into a "Wastewater Contract" ("the Wastewater Contract") which provided that the parties would "cooperate" in providing sewer services to Respondent's area. In Article IV, Section

---

1. All statutory references are to RSMo 2000.

2. Respondent was organized as a "nonprofit sewer company" pursuant to sections 393.825 to 393.861.

3. Section 393.847 provides that in conjunction with the "construction, maintenance and operation" of its wastewater lines and treatment facilities, "every nonprofit sewer company shall be supervised and regulated by the department of natural resources...."

401, the Wastewater Contract required that Respondent "shall, at its own expense and cost, maintain any and all improvements to [Respondent's system] necessary to continue the delivery of sewage to the Connection Point . . ." with the City's Publicly Owned Treatment Works ("POTW"). Additionally, it provided at Section 403:

(a) [Respondent] shall adopt and maintain at all times while this contract is in effect, Regulations governing usage and connection to such sewers at least as restrictive as [the City] may require and apply from time to time within [the City], and shall amend such Regulations as needed which shall at all times conform to [the City's] ordinances as amended.

(b) [Respondent] shall be responsible for collection of fees and charges for use of the [sewer system] and shall include in the billing to Users *a component* for the fees and charges set in Section 501 [of the Wastewater Contract], *as they may be increased or decreased by [the City]* . . . . The fees and charges billed by the City . . . per Section 501 shall be deemed to be expenses of operating the system.

(Emphasis added). Article V, Section 501, dealing with "User Charges" set out that the City

will charge [Respondent] a fee for the treatment and use of the [sewer system] based upon rates and charges, including sewer connection fees established by [the City] from time to time for the use of [the City's] sewer lines and the treatment of wastewater, which rates and charges shall be *equal to and be the same as apply to users within [the City]*, except for authorized deductions or exceptions as set forth herein. *Such fees and charges shall include, but not be limited to, all user fees and connection fees charged by [the City] to its*

*residents for the use of the [City's sewer system]* . . . . *Failure by [Respondent] to pay [the City] a sum of money equal to rates and charges made by [the City] to its residents for use of the [City's sewer system], and connection fees less authorized deductions, is a breach of this agreement entitling [the City] to discontinue treatment of sewage from [Respondent] and seek appropriate judicial relief.*

\*          \*          \*

a. [Respondent] may deduct and retain a 4 1/2 [percent] fee from the amount due to defer its administrative costs; plus

b. [Respondent] may deduct and retain a percentage of the amount due for the operation, maintenance, rehabilitation and repair of its collector sewer system calculated to the nearest one-tenth of one percent according to [a set formula] . . . .

c. [Respondent] may deduct and retain a percentage of the amount due, which represents the portion of [the City's] fees charged from time to time, to protect for bad debts, calculated to the nearest one-tenth of one percent, being a percentage equal to the percentage of bad debts experienced by [the City] in collecting sewer use charges in the previous fiscal year.

(Emphasis added). In Article II, Section 201 the Wastewater Contract provided that Respondent

shall pay [the City's] customary impact fee, which is calculated to be the sum of $97,400[.00] . . . . [Respondent] represents to [the City] that it has obtained or it has reasonable assurances that it can obtain a loan from the Rural Development Office, which will be used by [Respondent] to pay [the City's] customary impact fee.

Proceeds from the loan shall be used to pay [the City's] customary impact fee. [Respondent] shall also pay the then customary impact fee being assessed by [the City] for any User connecting to [Respondent's] [s]ewer [s]ystem after November 1, 2001.... *Any User who connects to [Respondent's] [s]ewer [s]ystem after the above fee has been paid shall pay at the time of connection the impact fee in force and effect for the [City's] customers.*

(Emphasis added).

On January 30, 2004, the City and Appellant's predecessor-in-interest entered into a "Sewer and Land Use Prohibitions and Irrevocable Petition for Annexation" ("Sewer Line Extension Agreement") which provided that the City agreed to supply "sanitary sewer service to [the property at issue] until such time as the City of Nixa, Missouri, chooses to annex this area and assume responsibility for operation of the sanitary sewer system." Due to the property's location, it would not be served directly by the City, but, instead, through Respondent.

In May of 2004, Appellant purchased "the property at issue in the Sewer Line Extension Agreement" and platted the property to include 107 lots. Eleven residences had already been constructed at the time of trial.

Since August of 2005, for each home hooked up to its system Respondent required a hook-up fee of $600 from 15 separate users in the Subdivision, and since December of 2006 Respondent required an impact fee of $1,500.00 from 3 separate users.[4]

In February of 2007 Respondent notified Appellant that Appellant would need to pay an impact fee of $1,400.00 per constructed residence and a hookup fee of $600.00 per constructed residence for each of the eleven residences which had been constructed in the Subdivision and which had all been hooked up to Respondent's sewer system.[5] Appellant responded by refusing to pay the amounts charged by Respondent and, instead, offered to pay a hook-up fee of $300.00 contending that the hook-up fee was in conformity with the amount typically charged by the City for such a connection.

Appellant filed its "First Amended Petition" against Respondent on March 27, 2007, in which it sought a declaratory judgment determining that Respondent had no right "to collect an impact fee from [Appellant] under the terms of ..." the Settlement Agreement and the Wastewater Contract;[6] that under the terms of the

---

4. It is undisputed that the City required of its users a hook-up or connection fee of only $300.00 with no impact fee being charged.

5. The stipulated facts make it clear that Respondent

    has never remitted a hook[-]up fee of more than $300[.00] per user to the City ... for each property hooked up to [Respondent's system], including the new users in [the] Subdivision. [Respondent] has never remitted an impact fee to the City ... and contends it is not required to remit an impact fee in any dollar amount to the City ... for the services it provides in [its specific geographical] area.

The record shows that prior to trial Respondent had only remitted one payment to the City of $300.00 for one of the eleven residences in the Subdivision; Respondent indicated that once it confirmed occupancy of the remaining ten residences, it would remit $300.00 payments to the City for those hookups.

6. Appellant asserted that it was a third party beneficiary to the various agreements existing between the City and Respondent and between the City and Appellant's predecessor-in-interest. For purposes of this opinion, this Court assumes without so holding that Appellant was a third party beneficiary herein.

Settlement Agreement and the Wastewater Contract Respondent had no right to "collect a hook-up fee from [Appellant] ... beyond the hook-up fee charged by the City ..., which is presently $300[.00] per hook-up;" that "any charges exceeding the City['s] ... charges are per se unreasonable;" that Respondent's actions in charging more than the City exceeded its "authority" under the laws of the State of Missouri; that, alternatively, the charges asserted by Respondent were "unreasonable whether or not the provisions of ..." the Settlement Agreement and the Wastewater Contract applied; and it requested "reasonable attorneys [fees] and costs incurred in bringing [its] action." Appellant additionally asserted that "[t]here is an actual controversy between [Appellant] and [Respondent] regarding the fees and amounts ... [Respondent] is authorized to charge ..." under the various agreements at issue and that Respondent "has threatened to withhold sewer services from [Appellant] if [it] does not pay [Respondent] the excessive fees demanded" such that Appellant has no "adequate remedy at law." Accordingly, Appellant prayed that the trial court would "enjoin [Respondent] from withholding provision of sewer services ... pending the resolution ..." of the parties' issues.

On July 27, 2007, Respondent filed its "Answer to [Appellant's] Petition and [Respondent's] Counterclaim against [Appellant]" in which it also sought relief in two counts. First, Respondent asserted a breach of contract claim against Appellant due to its refusal to pay the required fees in contravention of the Sewer Line Extension Agreement signed by Appellant's predecessor-in-interest and Respondent which Respondent contended Appellant had assumed. Respondent urged it was damaged in an amount "totaling $1,400.00 times the number of total lots as an impact fee and $600.00 times the number of con-nected lots as a hook-up fee, in addition to [nine percent] interest from the date of connection...." Second, Respondent requested "a preliminary injunction restraining [Appellant] from connecting additional units to [Respondent's system] until all required fees for each unit connected are paid into the Court...."

A trial on the above stipulated facts was held on February 9, 2009. Following its review of the documents submitted by the parties, the trial court found the issues in favor of Respondent. The Court found that Respondent was not prohibited from charging an impact fee or a hook-up fee that exceeded the fee it was required to pay to the City. Thereafter, on May 4, 2009, the trial court adopted the proposed findings of fact and conclusions of law and judgment offered by Respondent. In its conclusions of law, the trial court determined that "the contracts and Missouri statute at issue in this litigation do not prohibit [Respondent] from charging an impact fee or a hook-up fee that exceeds the fee [Respondent] pays to the City...." The trial court further determined the Settlement Agreement did "not address the amount that [Respondent] can or must charge its customers ..." and that the Wastewater Contract was "not ambiguous and addresse[d] only the minimum amount [Respondent] can charge for its ... collection and distribution services ..." because the Wastewater Contract set out that "the regulations adopted by [Respondent] must be at least as restrictive as [the City] may require and that [Respondent] must include simply as a component within the charges it passes on to its users the fees established by [the City]...." It also determined the Sewer Line Extension Agreement between Appellant's predecessor-in-interest and the City "only addresse[d] the fact that the owners of the property within [Respondent's] Service

Area pay the required fees ..., but [did] not address the amounts [Respondent] must charge for the required fees;" that Respondent did not violate section 393.849, because that provision "only addresse[d] the mechanism by which profits in excess of what is spent on the items listed in the statute be distributed proportionately among [Respondent's members] at the end of the fiscal year;" and that section 393.849 also "does not address the reasonableness of fees charged by a nonprofit sewer company nor does the statute address the amount of fees a nonprofit sewer company can charge its members or customers." As a result, the trial court adjudged, *inter alia*, that Appellant was required to pay the amount requested by Respondent for impact and hook-up fees such that it owed Respondent $48,000.00 for the 24 lots in the Subdivision which had been hooked up to Respondent's system. This appeal followed.

In its first point relied on, Appellant maintains the trial court erred in holding that Respondent is

> entitled to collect from [Appellant] a sewer hook-up fee and impact fee exceeding the fees currently charged by the City ... because the Settlement Agreement and Wastewater Contract limit the amount [Respondent] may charge and collect to fees currently charged by the City ..., in that the City ... currently charges a hook-up or connection fee of $300[.00] per user and does not charge an impact fee.

The interpretation of an unambiguous contract is a question of law. *City of St. Joseph v. Lake Contrary Sewer Dist.*, 251 S.W.3d 362, 367 (Mo.App.2008). " 'The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent.' " *Pepsi Midamerica v. Harris*, 232 S.W.3d 648, 655 (Mo.App.2007) (quoting *Butler v.*

*Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. banc 1995)). "The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning." *Id.*

■ Appellant argues the Wastewater Contract does not expressly permit Respondent to charge and collect fees beyond those charged by the City and, therefore, the trial court erred when it determined the Wastewater Contract was unambiguous and erred when it permitted Respondent to charge and collect fees beyond those charged by the City. As Appellant maintains, "[s]imply put, the Wastewater Contract cannot unambiguously address the issue of additional fees when the Wastewater Contract is silent on the issue. Rules of contractual interpretation must be applied." We disagree.

■ Here, the parties have stipulated to all pertinent facts. It has long been held that "an ambiguity cannot be created by silence, especially when both parties are sophisticated bargainers." *Halls Ferry Investments, Inc. v. Smith*, 985 S.W.2d 848, 853 (Mo.App.1998). This Court can glean the "intent of the parties ... from the contract alone and the court is bound to enforce the contract as written." *Robbins v. McDonnell Douglas Corp.*, 27 S.W.3d 491, 496 (Mo.App.2000). Considering the entire contract, along with its object, nature and purpose, *id.*, this Court agrees with the trial court that the Wastewater Contract does not control how much Respondent charges its customers such as Appellant.

Looking at the plain and ordinary meaning of the language in the contracts at issue, it is this Court's view that none of the contracts address the *maximum* amount Respondent can charge its own customers for hook-ups nor do they ad-

dress whether Respondent can charge its customers an impact fee. The Wastewater Contract entered into between the City and Respondent, covers the terms and conditions of the City's providing sewage treatment services to Respondent, the obligations of both parties, details regarding the responsibilities for "Improvements to the System," various "Liabilities and Indemnification [s]," details relating to the operation and maintenance of the "English Village connector" pipe which attaches to the City's sewage treatment plant as well as miscellaneous, standard contract provisions. In Article V of the Wastewater Contract, entitled "User Charges," there are several paragraphs, set out above in this opinion, regarding the fees Respondent is required to pay to the City, but there are no provisions setting out what amounts Respondent may charge its users, provided these charges are not *less* than those the City imposes on its customers. Further, Article II of the Wastewater Contract, entitled "Improvements to the System," contains a provision in section 201, which relates to "Costs and Process," and sets out at subsection (b) that Respondent is required to pay to the City the "customary impact fee" of $97,400.00 for the users already connected to Respondent's sewer system as of November 1, 2001, and required that Respondent "shall pay the then customary impact fee being assessed by [the City] for any User connecting to [Respondent] after November 1, 2001, prior to the connection of such User to [Respondent's] system."

In this connection, we note that one of the primary themes running throughout the Wastewater Contract is that the City is making certain that Respondent pays for the City's services and that Respondent be prohibited from imposing "rates and charges" to its users for *less* than those that apply to the City's own customers. For example, Article V, Section 501, sets out, in part, that

> *[the City] will charge [Respondent]* a fee for the treatment and use of the [sewer system] ... which rates and charges shall be equal to and be the same as apply to users within [the City].... Such fees and charges *shall include, but not be limited to, all user fees and connection fees charged by [the City] to its resident for the use of [the City's sewer system].... Failure by [Respondent] to pay [the City] a sum of money equal to rates and charges made by [the City] to its residents for use of the [City's sewer system] and connection fees ... is a breach of this agreement* entitling [the City] to discontinue treatment of sewage from [Respondent] and seek appropriate judicial relief.

(Emphasis added). Furthermore, the italicized portion of Section 201, *supra*, reinforces this same theme with the provision that "[a]ny User who connects to [Respondent's] [s]ewer [s]ystem after the above fee has been paid shall pay at the time of connection the impact fee in force and effect for the [City's] customers." In short, when read together, the paragraphs do not limit Respondent's ability to impose rates and charges, but provide *that at a minimum* Respondent may not charge less than what the City charges its own customers.

Likewise, the Settlement Agreement between the City, Respondent, and other entities only provides that Respondent is to pay to the City a "customary impact fee" of $97,400.00 for the existing users within Respondent's area, and that Respondent would then collect "all fees and charges for sewer services charged by [the City] to its customers and [the City] shall provide [Respondent's users] with the same sewer services as all other customers of [the City]." In the Settlement Agree-

ment, there is no mention of the rate Respondent can charge its customers and the Settlement Agreement, as with the Wastewater Contract, is not made ambiguous by its silence on that issue. There are simply no provisions in the contracts at issue which preclude Respondent from charging a $600.00 hook-up fee and a $1,400.00 impact fee on the lots owned by Appellant or on any other lots within its geographic area.[7] The trial court did not err in determining Respondent could charge its requested fees, and in adjudging Appellant liable for payment of the fees charged by Respondent. Point I is denied.

■ In its second point relied on, Appellant asserts the trial court erred in finding Respondent was entitled to collect from Appellant a $600.00 hook-up fee and a $1,400.00 impact fee in that "[s]ection 393.849 … limits the fees [Respondent] may charge and collect to those fees reasonably necessary for its operations, in that there is no evidence in the record regarding the reasonable necessity of the fees."

■ Section 393.849, pertaining to refunds of excess revenues by a nonprofit sewer company, provides that:

[r]evenues of a nonprofit sewer company for any fiscal year in excess of the amount thereof necessary:

(1) To defray expenses of the company and of the operation and maintenance of its facilities during such fiscal year;

(2) To pay interest and principal obligations of the company coming due in such fiscal year;

(3) To finance, or to provide a reserve for the financing of, the construction or acquisition by the company of additional facilities to the extent determined by the board of directors;

(4) To provide a reasonable reserve for working capital;

(5) To provide a reserve for the payment of indebtedness of the company maturing more than one year after the date of the incurrence of such indebtedness in an amount not less than the total of the interest and principal payments in respect thereof required to be made during the next following fiscal year; and

(6) To provide a fund for education in the effective use of services made available by the company;

shall, unless otherwise determined by a vote of the members, be distributed by the company to its members as patronage refunds prorated in accordance with the patronage of the company by the respective members paid for during such fiscal year.

While Appellant argues this statute "creates a complete defense where [a] sewer service charges in excess of the amount allowed by statute …," this Court fails to see how section 393.849 relating to the disposition of excess funds by nonprofit sewer companies applies to the present situation, i.e., how much Respondent is allowed to charge its customers. Further, this Court was unable to locate any statute which addresses the amount a nonprofit sewer company may charge its customers. Additionally, this Court finds no requirement that Respondent had any duty to prove at trial that its stated fees were "reasonably necessary for its operations" as urged by Appellant, and Appellant does not point this Court to any such require-

---

7.  Section 393.847.2 sets out that:
    [t]he public service commission shall not have jurisdiction over the construction, maintenance or operation of the wastewater facilities, service, rates, financing, accounting or management of any nonprofit sewer company.

ment outside of its appellate argument.[8] The trial court did not err in finding that section 393.849 was inapplicable to the present matter. Point II is denied.

The judgment of the trial court is affirmed.

BATES, P.J., and BURRELL, J., concur.

8. In the argument portion of its brief, Appellant cites this Court to section 393.280 and asserts it is "a complete defense where sewer service charges in excess of the amount allowed by statute are demanded...." This argument fails for two reasons. First, section 393.280 clearly applies only to municipalities and Respondent is not a municipality. Second, section 393.280 is an affirmative defense and the burden of pleading and proving it falls on Appellant not on Respondent. As such, section 393.280 does not aid Appellant.