**AUTO–OWNERS INSURANCE COMPANY, Respondent,**

v.

**Joshua ENNULAT and the Estate of Russell Ennulat, Appellants,**

and

**William Haas, Bret Burnett and Ohio Valley Tower Services, Defendants.**

No. ED 87952.

Missouri Court of Appeals, Eastern District, Division Five.

Aug. 14, 2007.

Roger G. Brown, Jefferson City, MO, for appellant.

Russell F. Watters, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Joshua Ennulat and the estate of Russell Ennulat ("Plaintiffs") appeal from the judgment of the Circuit Court of the City of St. Louis entered in favor of Auto–Owners Insurance Company ("Auto–Owners"). We affirm in part, reverse in part, and remand.

### Facts and Procedural History

In November 1999, Richard Ennulat ("Decedent"), in the course and scope of his employment with Cellxion Corporation, was constructing a building next to the construction site of a cellular telephone tower in Jefferson City, Missouri. William Haas and Bret Burnett ("Defendants"), friends of Decedent and owners of Ohio Valley Tower Service, a cellular telephone installation and maintenance company, were hired to build the cellular telephone tower in Jefferson City. Because he wanted to make extra money for Christmas, Decedent asked Defendants if he could assist them in erecting the tower. Defendants acquiesced. Decedent had substantial experience in erecting cellular telephone towers and was as experienced, if not more so, than Defendants.

On November 26, 1999, his first day working with Defendants, Decedent fell from the tower and died the following day. Prior to his fall, Decedent had unhooked his safety lanyards and center hook. Defendants testified that if Decedent had left just one attached, he would not have fallen. Defendants also stated that they did not supervise Decedent due to Decedent's experience in erecting towers. However, the Occupational Safety & Health Administra-tion ("OSHA") investigated Decedent's death and cited Defendants for not having a safety net at the work site.

In November 2001, Plaintiffs brought a wrongful death action against Defendants in Cole County. Defendants tendered the defense of the action to their general liability insurer, Auto–Owners. In October 2002, Plaintiffs dismissed the suit in Cole County and, in December 2002, re-filed it against Haas and Burnett, both individually and doing business as Ohio Valley Tower Services, in the City of St. Louis. Haas and Burnett again tendered Plaintiffs' suit to Auto–Owners. Auto–Owners again declined coverage, but offered to defend Haas and Burnett under a reservation of rights. Defendants initially accepted the defense under reservation. Mark Ludwig, the attorney provided to Defendants by Auto–Owners, answered the petition and asserted the affirmative defenses of comparative fault and workers' compensation exclusivity.

Thereafter, Auto–Owners filed the instant declaratory judgment action seeking a judicial determination of whether the policy covered Plaintiff's wrongful death action. Specifically, Auto–Owners sought a judgment declaring that Decedent was an employee of Haas and Burnett and therefore, the Auto–Owners policy did not provide coverage for the allegations of the wrongful death suit. Defendants hired Christopher Rackers as their personal counsel to represent them in the declaratory judgment action.

In March 2003, Plaintiffs made a settlement demand for $1.9 million. When Plaintiffs learned that the policy limits were $1 million, they lowered their demand to $1 million. At this time, Mr. Ludwig valued Plaintiffs' claim between $250,000 and $750,000, with a ceiling of $1

million. In June 2003, after Auto–Owners declined to settle the wrongful death claim for the policy limits or provide a defense without reservation, Defendants discharged Mr. Ludwig as their counsel. Mr. Rackers entered his appearance as defense counsel in the wrongful death action and continued to assert the affirmative defenses of comparative fault and workers' compensation exclusivity.

Sometime during the summer of 2003, the parties entered into a Section 537.065[1] agreement. Under the agreement, Plaintiffs consented to release Defendants from all personal liability and to seek satisfaction of any judgment solely from the Auto–Owners' policy. Defendants agreed to refrain from offering any evidence in opposition to Plaintiffs' claim at the hearing, calling any witnesses, or cross-examining Plaintiffs' witnesses. The Section 537.065 agreement placed a floor of $3 million on the value of Plaintiffs' claim. Specifically, the agreement stated that the "damages sustained by Plaintiff ... have a value of at least $3,000,000 and ... a verdict or judgment may be rendered for that amount or more."

In July 2003, Mr. Rackers sent a proposed judgment to Plaintiffs. The proposed judgment provided for an award of $10 million and included a finding that Defendants' negligence caused Decedent's death. The parties negotiated and edited the terms of the agreement prior to submitting it to the wrongful death court. Thereafter, the wrongful death court held a hearing on Plaintiffs' wrongful death claim. The hearing lasted approximately 75 minutes, and no witnesses testified regarding Defendants' liability, Plaintiffs submitted the OSHA report as proof of negligence, and three witnesses testified regarding Plaintiffs' damages. Following the presentation of evidence, Plaintiffs submitted the previously negotiated proposed judgment to the wrongful death court.

Immediately after receiving the proposed judgment, the wrongful death court stated "[b]ased on the evidence adduced, the Court will enter a judgment in favor of the Plaintiffs and against the Defendants, William Haas and Bret Burnett individually and doing business as Ohio Valley Tower Services jointly and severally in the amount of $10 million." Before leaving the court room that day, the wrongful death judge signed the proposed judgment—including the provision for a $10 million damage award—without any additions, deletions or changes. On September 30, 2003, the wrongful death court entered a further judgment awarding Plaintiffs prejudgment interest on the $10 million wrongful death judgment.

In April 2005, the trial court in the instant matter granted Plaintiffs' Motion for Summary Judgment, finding that Decedent was not Defendants' employee and therefore, the Auto–Owners' policy covered Plaintiffs' wrongful death claim. Plaintiffs then submitted another summary judgment motion seeking a judgment that the damages awarded in the wrongful death judgment were reasonable, an award of attorney fees, and pre-and post-judgment interest. On May 16, 2005, Auto–Owners paid $1 million into the court's registry, which the court disbursed to Plaintiffs. Auto–Owners then filed a motion for partial summary judgment, arguing that its payment of the policy limits into the court's registry ended its liability for additional accrual of post-judgment interest.

In September 2005, the trial court denied Plaintiffs' Motion for Summary Judg-

---

**1.** All statutory references are RSMo 2000 un- less otherwise indicated.

ment, ruling that a genuine issue of material fact existed as to the reasonableness of the wrongful death judgment, and set the matter for trial. At trial, both Plaintiffs and Auto–Owners presented evidence regarding the reasonableness of the wrongful death judgment. Following the trial, the court ruled that the wrongful death judgment was not a judgment entered by a court, but rather was a consent judgment. The trial court reasoned that the judgment was not based on any disputed issues, but was based on the parties' agreement as to both liability and damages. The trial court then found that a reasonable defendant in the position of Defendants would have settled the case for $2.4 million, not $10 million, and entered a judgment in that amount.

The trial court also found that Plaintiffs were not entitled to pre-or post-judgment interest because the supplementary payments provision of Auto–Owners' policy did not provide for the payment of interest when Auto–Owners did not control the defense of the claim. The court held that Auto–Owners deposit of $1 million policy limits into the court's registry further protected it from liability for post-judgment interest after May 16, 2005, the date that it placed the policy limits with the court. Moreover, the trial court found that Plaintiffs were not entitled to attorneys' fees because the case did not fall within any exception to the American Rule. This appeal followed.

## Standard of Review

■ We will affirm a trial court's judgment in a court tried case unless it is unsupported by substantial evidence, against the weight of the evidence, erroneously declares the law, or erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

Our review of a grant of summary judgment is essentially *de novo. ITT Comm'l Fin. Corp. v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). We view the record in the light most favorable to the non-movant. *Id.* Facts set forth in support of the moving party's motion are considered to be true unless contradicted by the non-movant's response. *Id.* A trial court's judgment will be upheld if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Id.* at 380.

## Analysis

### A. Reasonableness of Damages

■ In their first point on appeal, Plaintiffs contend the trial court erroneously declared and applied the law when it found that only $2.4 million of the $10 million wrongful death judgment was reasonable. In essence, Plaintiffs assert that the underlying judgment was the result of the wrongful death court's independent judgment, rather than a consent judgment and therefore, under *Betts–Lucas v. Hartmann,* 87 S.W.3d 310 (Mo.App. W.D.2002), collateral estoppel precluded another court from disturbing the judgment. In response, Auto–Owners asserts that the parties to the wrongful death judgment consented to damages as well as liability in their Section 537.065 agreement and, accordingly, the declaratory judgment court properly engaged in the reasonableness inquiry as articulated in *Gulf Ins. Co. v. Noble Broadcast,* 936 S.W.2d 810 (Mo. banc 1997).

In *Gulf Insurance,* an insurance company filed a declaratory judgment action asking the court to find that a settlement agreement for injuries suffered by a parade bystander, when Noble Broadcast's mobile radio studio ran over her leg, was not enforceable against the insurance company because it was unreasonable, collu-

sive and obtained by fraud. *Id.* at 812. There, the bystander filed suit against Noble alleging that its negligence caused her injury. *Id.* The insurer declined to defend the suit and, thereafter, the bystander and Noble entered into a settlement agreement pursuant to the terms of Section 537.065. *Id.* As a part of the Section 537.065 agreement, Noble agreed to have a consent judgment entered against it for $1,000,000. *Id.* The trial court entered a judgment against Noble for $1,000,000 and the bystander dismissed all other claims. *Id.*

Upon tendering the judgment to Gulf Insurance, the insurer refused to indemnify Noble and sought a declaratory judgment that the policy did not cover the injury and, in the alternative, that the judgment was unenforceable because it was unreasonable, collusive and obtained by fraud. *Id.* The trial court granted the bystander, Noble and the business auto insurance company summary judgment on the coverage issue. *Id.* However, the trial court found that the settlement unenforceable because the amount was unreasonable. *Id.*

On appeal, the Supreme Court determined that, while an insurer is barred from challenging the enforceability of a judgment entered pursuant to a Section 537.065 settlement agreement, an insurer may challenge the amount of damages awarded pursuant to that agreement as unreasonable. *Id.* at 815–16. Moreover, an insurer "has the right to dispute the reasonableness of a Section 537.065 settlement in subsequent litigation to recover against the insured's policy." *Id.*

In reaching its decision, the Supreme Court articulated that a settlement amount under Section 537.065 is only valid where it is free from collusion and fraud and the settlement amount is reasonable. *Id.* The Gulf Insurance court reasoned that:

the conduct of the insured can hardly be characterized as fraudulent simply because he stipulates to a large settlement figure in order to obtain his release from liability. He has little or nothing to lose because he will never be obligated to pay. As a consequence, the settlement of liability and damages may have very little relationship to the strength of the plaintiff's claim.

*Id.* at 816 (quoting *Steil v. Fla. Physicians' Ins. Reciprocal,* 448 So.2d 589, 592 (Fla.Dist.Ct.App.1984)).

The test for reasonableness is "what a reasonably prudent person in the position of the defendant would have settled for on the merits of the plaintiff's claim." *Id.* In determining reasonableness, we consider the "facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial." *Id.* "The burden of proving the reasonableness of the settlement contract is on the insurer, who has elected not to participate in the underlying case." *Id.* A finding of unreasonableness does not invalidate a settlement agreement; rather, it requires a trial court to "determine a reasonable settlement amount for which the insurer should be held liable." *Id.*

In the instant matter, much like in *Gulf Insurance,* Defendants agreed not to contest liability and also to submit a judgment, awarding Plaintiff ten million dollars, to the wrongful death court. Prior to the wrongful death hearing, counsel for Plaintiffs and Defendants negotiated and drafted a proposed judgment, which provided for a $10 million award in Plaintiffs' favor. Plaintiffs presented the judgment to the wrongful death court following the hearing, which the court immediately signed with no additions, deletions or changes to any part of the document before signing it.

When Plaintiffs and Defendants agreed to the amount of damages to be awarded by the wrongful death court, as memorialized in the proposed judgment and presented to the wrongful death court for its signature, they left no issues in dispute at the wrongful death hearing, and therefore, the wrongful death judgment was the result of a settlement, rather than a trial on the merits. In light of the above, the trial court properly applied the *Gulf Insurance* test to determine whether the $10 million verdict in the wrongful death suit was reasonable and accordingly enforceable.[2]

█ In addition to properly applying the *Gulf Insurance* standard, the trial court had before it substantial evidence when it determined that only $2.4 million of $10 million verdict was reasonable. Here, after hearing testimony and considering exhibits, the trial court found that a reasonably prudent defendant in Defendants' position would not have settled Plaintiffs' claims for $10 million. The trial court credited both parties' experts on this issue, but found that Plaintiffs only presented evidence that $10 million was a reasonable settlement amount, rather than evidence proving that $10 million was an amount that a reasonably prudent defendant in Defendants' position would have agreed upon.

In contrast, Defendants' experts testified to a number of factors influencing a potential verdict in this case. The experts' potential verdicts ranged from $200,000–$750,000. They considered factors such as: comparative fault; workers' compensation exclusivity; Defendants' likeability; the fact that Defendants were doing Decedent a favor; and the possible inadmissibility of the OSHA report. The trial court then determined that a reasonably prudent defendant in Defendants' position would have settled the claim for $2.4 million. The trial court found that the two biggest factors in Defendants' favor were Decedent's comparative fault—which the experts placed between 20–60%—and that Decedent was Defendants' statutory employee and therefore, subject to workers' compensation exclusivity. Accordingly, because substantial evidence in the record supports the trial court's findings, and its judgment is not against the weight of the evidence and does not erroneously declare or apply the law, the trial court did not err. Point denied.

## B. Pre-and Post–Judgment Interest

█ In their second point on appeal, Plaintiffs contend the trial court erred in denying their Motion for Summary Judgment regarding their entitlement to pre- and post-judgment interest because, when Auto–Owners waived control of the defense of the wrongful death claim by refusing to defend Defendants without a reservation of rights, it also waived its right to demand compliance with the provisions of the policy. In response, Auto–Owners asserts that the trial court's findings should

---

**2.** Plaintiffs contend that *Betts–Lucas v. Hartmann*, 87 S.W.3d 310 (Mo.App. W.D.2002), in effect supersedes *Gulf Insurance* and articulates a new test for a judgment entered by the trial court after the parties entered into a Section 537.065 agreement. However, we do not believe Betts–Lucas establishes a standard different from that in *Gulf Insurance*. In *Betts–Lucas*, the court specifically held that the damages awarded by the trial court were not the result of a settlement, but rather of a trial. *Id.* As a result, the court found the *Gulf Insurance* reasonableness test inapplicable. *Id.* The court then determined that substantial evidence supported the trial court's judgment, reasoning that the trial court did not do "anything more than view the evidence as an impartial judicial officer and make [his or her] best judgment as to the amount of damages." *Id.* In the view of the court, the most important factor was that "the judgment was entered upon liability and damages after a trial and not as a result of a settlement." *Id.*

be upheld because the policy's supplementary payments provision provides coverage for interest only in those cases where Auto–Owners handled the defense and, in this case, Auto–Owners did not control Defendants' defense at the time the underlying $10 million judgment was entered. Essentially, Auto–Owners contends that because Defendants discharged its attorney, it was not in control of the defense, and thus is not liable for pre-and post-judgment interest.

Auto–Owners' policy states:

SUPPLEMENTARY PAYMENTS–COVERAGES A and B

We will pay, with respect to any claim or "suit" we defend:

. . .

6. Prejudgment interest awarded against the insured on the part of the judgment we pay. If we make an offer to pay the applicable limit of insurance we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit on insurance.

These payments will not reduce the limits of insurance.

▇▇▇▇ Under Missouri law an insurer, after giving its insured proper notice, may defend the insured while reserving the right to later disclaim coverage. *Truck Ins. Exch. v. Prairie Framing, LLC,* 162 S.W.3d 64, 88 (Mo.App. W.D.2005). The insured may then choose either to accept or refuse the insurer's reservation of rights defense. *Id.* If the insured accepts, then the insurer's offer to defend is not considered a denial of coverage, but if the insured refuses the insurer has three op-

tions: "(1) it may represent the insured without a reservation of rights; (2) it may withdraw from representing the insured altogether; or (3) it may file a declaratory judgment action to determine the scope of [the] policy's coverage." *Id.* (internal citations omitted).

▇▇▇▇ If the insurer chooses option (3), its "decision is a risky one because it is treated as a refusal to defend an insured, and, if unjustified, the insurer is treated as if it waived any control of the defense and rights to participate in the underlying tort action." *Id.* (internal citations omitted). Thus, if the insurer's decision regarding coverage is erroneous, the insurer is "bound by the decision it has made." *Id.*

This issue was recently addressed by the Southern District in *Versaw v. Versaw,* 202 S.W.3d 638 (Mo.App.S.D.2006). In *Versaw,* the court held that the insurer was liable under its supplementary payments provision for post-judgment interest when the insurer had declined to defend the insured after the insured refused a defense under a reservation of rights. *Id.* at 652. There, the insurer's supplemental payments provision was similar to the one here, as it provided for the payment of interest accrued on a judgment rendered in a suit that it defended. *Id.* at 651. The insurer had refused to defend except under a reservation of rights. *Id.* When the insured refused that offer, the insurer chose option (2) and withdrew from representing the insured altogether. *Id.* But the insurer erred in its coverage assessment, so its refusal to represent the insured constituted a breach of its duties. *Id.* at 652. Because it was a suit the insurer "should have defended," the court held that the policy obligated the insurer to pay interest on the damages award. *Id.*

Here, Auto–Owners initially defended Defendants under a reservation of rights. However, when Auto–Owners refused to

settle with Plaintiffs for the policy limits or defend Defendants without a reservation of rights, Defendants rejected Auto–Owners' defense under reservation. Auto–Owners then chose option (3) and filed a declaratory judgment action to determine the scope of its policy. When it did, Auto–Owners, like the insurer in *Versaw*, did so at its own risk. Here, as in *Versaw*, the trial court found that Plaintiffs' claim came within the scope of Auto–Owners' policy. Hence, Auto–Owners' decision to defend Defendants only under a reservation of rights constitutes a refusal to defend. Accordingly, Auto–Owners waived its right to argue that it is not liable for pre-and post-judgment interest because it did not control the defense of the lawsuit and is liable for pre-and post-judgment interest on the $2.4 million judgment. Point granted.

## C. Terminating Accrual of Interest

 In their third point on appeal, Plaintiffs contend that the trial court erred in granting Auto–Owners' Motion for Summary Judgment on the issue of its liability for post-judgment interest after it deposited the policy limits into the court's registry because the amount did not satisfy the previously accrued post-judgment interest. In response, Defendants assert that any obligation it had to pay post-judgment interest terminated once Auto–Owners paid its policy limits into the court's registry.

In *Levin v. State Farm Mutual Automobile Insurance Co.*, the Missouri Supreme Court held that an insurer's payment of the policy limits into the court's registry stops the accrual of post-judgment interest. 510 S.W.2d 455 (Mo. banc 1974). In *Levin*, the plaintiffs asserted that an insurer, in order to stop post-judgment interest from accruing, must pay the policy limits as well as any interest and costs that have accrued. *Id.* at 458. However, the Supreme Court disagreed, stating that the insurer's supplementary obligations are

separate and apart from the policy limits. *Id.* at 458–59. "It strains the meaning of the supplementary provisions to say that they serve to increase the company's liability on the judgment. They do not. Instead they enlarge the company's liability for specified obligations and expenditures over and above the company's" policy limits. *Id.* at 459.

In *Levin*, the applicable policy provision provided that State Farm was obligated to pay "costs taxed against the insured in any such suit and, after entry of judgment, all interest accruing on the entire amount thereof until the company has paid or tendered such part of such judgment as does not exceed the limit of the company's liability thereon." *Id.* at 457–58. The court held that State Farm was liable for post-judgment interest on the entire judgment entered until it satisfied the portion for which it was liable—the policy limits. *Id.* at 461. The court reasoned that because "[a]n insurance company's liability is determined by the terms of its policy," courts cannot hold an insurance company liable for interest "except in compliance with the policy terms." *Id.* at 461. Accordingly, when State Farm paid its policy limits, even though the amount was less than the total judgment and did not include costs and interest, no further interest accrued because State Farm's policy stated it would be liable for interest on the entire judgment only until it paid its policy limits. *Id.* at 462; *see also White v. Auto Club Inter–Ins. Exch.*, 984 S.W.2d 156, (Mo. App. W.D.1998).

The applicable portion of Auto–Owners' policy regarding post-judgment interest states that it will pay, "All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit on insurance."

Here, like *Levin*, the supplementary payments provision regarding post-judgment interest clearly and unambiguously states that Auto–Owners is liable for post-judgment interest on the full amount of the judgment, even if the judgment exceeds the policy limits, but only until such time as it pays the policy limits. Thus, post-judgment interest ceased accruing on May 16, 2005, when Auto–Owners paid the $1 million policy limits into the court's registry. Point denied.

### D. Attorneys' Fees

■ In their fourth point on appeal, Plaintiffs contend the trial court erred in denying their Motion for Summary Judgment regarding attorneys' fees because Auto–Owners breached its duty to Defendants and involved Plaintiffs in collateral litigation. In response, Auto–Owners asserts that an insurer has an absolute right to file a declaratory judgment action where there is a question of coverage and, accordingly, no unusual circumstances justified the imposition of attorneys' fees.

■ The trial court has broad discretion over attorney fees and we will not overturn its decision absent an abuse of that discretion. *DCW Enter., Inc. v. Terre du Lac Ass'n, Inc.*, 953 S.W.2d 127, 132–33 (Mo.App. E.D.1997). In the absence of statute or contract, "our courts have rarely found the very unusual circumstances that permit the award of attorneys' fees." *Id.*

Here, Plaintiffs are attempting to recover their attorneys' fees expended in connection with the instant declaratory judgment action filed by Auto–Owners. Plaintiffs acknowledge that attorneys' fees may be awarded as costs under Section 527.100, only "where very unusual circumstances have been shown." Nevertheless, Plaintiffs contend that this suit constitutes collateral litigation, which we have recognized may provide a basis for recovery of attorneys' fees. *See City of Cottleville v. St. Charles County*, 91 S.W.3d 148, 150 (Mo.App. E.D.2002).

■ As we explained in *City of Cottleville*, "the collateral litigation exception allows a plaintiff in a case alleging breach of duty against a defendant, to recover the attorneys' fees plaintiff expended to defend a *different and collateral action brought by a third party.* ..." *Id.* at 151 (emphasis added). In this case, the trial court refused to award the attorneys' fees incurred in connection with the litigation between Plaintiffs and Auto–Owners in this lawsuit, rather than attorneys' fees expended as the result of different litigation with a third party. Thus, the collateral litigation exception is inapplicable.

Plaintiffs also contend that they are entitled to attorneys' fees because Auto–Owners' conduct in filing the declaratory judgment action was in bad faith. Beyond arguing that Auto–Owners "put its insured in the position of having to defend the wrongful death and declaratory judgment action at the same time," Auto–Owners has not articulated a basis for its "bad faith" contention. Missouri courts have consistently held that an insurer may file a declaratory judgment action to determine the scope of a policy's coverage. *See Citizens Ins. Co. of America v. Leiendecker*, 962 S.W.2d 446, 449 (Mo.App. E.D.1998); *Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 479 (Mo.App. W.D.1992). We are unaware of any Missouri authority that prohibits an insurer from filing a declaratory judgment action to determine coverage prior to a determination of ultimate factual issues in an underlying wrongful death suit. Point denied.

### Conclusion

Based upon the foregoing, we affirm in part and reverse in part the judgment of

the trial court and remand for proceedings consistent with this opinion.

BOOKER T. SHAW, C.J., and KATHIANNE KNAUP CRANE, J., Concur.