Jack GORALNIK, Goralnik Realty Company, L.L.C. and Goralnik Holding Company, L.L.C., Appellants,

v.

UNITED FIRE AND CASUALTY COMPANY, Respondent.

No. ED 88138.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 11, 2007.

Robert T. Haar, Haar & Woods, St. Louis, MO, for appellant.

Robert W. Cockerham, Brown & James, St. Louis, MO, for respondent.

Before ROY L. RICHTER, P.J., CLIFFORD H. AHRENS, J., and GLENN A. NORTON, J.

PER CURIAM.

Jack Goralnik, Goralnik Realty Company, LLC, and Goralnik Holding Company, LLC (collectively referred to as "Insured") appeal from the judgment of the trial court entered after a jury returned verdicts in favor of United Fire and Casualty Company ("Insurer") on Insured's claims, and in favor of Insurer on its counterclaim. In its judgment, the trial court granted Insur-

er's motion for attorneys' fees and expenses, awarding Insurer $389,740.91. We affirm in part and reverse in part.

Jack Goralnik is a partner in Goralnik Realty Company, LLC and Goralnik Holding Company, LLC, which own and manage real property including Twill Manor and Parkwood Place apartment complexes. These properties were insured by Insurer as of April 10, 2001. On that date, a hail storm passed through the St. Louis region that damaged many properties, including Twill Manor and Parkwood Place. Insurer had an independent adjusting company, Allmark Services, Inc. ("Allmark") handle the adjustment of the claim. Allmark assigned an employee, Robert Kannall, to perform the adjustment. Insured retained Anderson Roofing to negotiate and settle its claims with Insurer and to repair the damage.

Kannall inspected the property at Twill Manor, though he did not make an estimate for repairs or replacement at that time. He did not inspect all of the roofs at Parkwood Place, believing that they were all likely to be similarly damaged, but was not aware that two buildings at Parkwood Place had new roofs. Anderson Roofing prepared a scope of damages for Twill Manor, which it sent to Kannall, who used it in submitting an estimate to Insurer. Anderson Roofing sent a separate proposed scope of damages for Parkwood Place, which Kannall did not review. Kannall did not submit an estimate for damages to Insurer regarding Parkwood Place. He did not make any agreement about monetary damages for repairing the properties. Insurer terminated the services of Allmark, and Allmark in turn fired Kannall for performing incomplete work in adjusting the claims for Twill Manor and Parkwood Place.

Insurer thereafter had its Claims Supervisor for Missouri, Scott Gaddis, perform a claims adjustment of the properties at issue. Gaddis inspected the properties, including the roofs and siding, and determined that they did suffer some hail damage from the April 20, 2001, storm, but concluded that the roofs at Parkwood Place could be repaired and did not need to be replaced, and that the siding at Twill Manor could be repaired without replacing the siding on every structure there. Insurer thereafter sent separate checks to Insured based on Gaddis's adjustment, which Insured refused to accept. Insurer requested in writing that Insured enter into the appraisal process, a procedure set forth contractually in the insurance policies for the properties to try to resolve disputes. Although Insured apparently agreed initially to engage in the appraisal process, Insured filed a lawsuit before the appraisal process could be completed, in breach of the contractual provisions of the insurance policies.

Insured made several claims. Count I alleged that through their respective agents, Insurer had offered and Insured had accepted the sum of $335,698.38 for replacement for damages to Twill Manor, and that despite Insured performing all conditions required under the insurance policy, Insurer refused to pay the amount demanded on August 14, 2001. Insured further alleged that Insurer unreasonably and vexatiously refused to pay the amounts owed, and had not acted in good faith to settle the matter, and Insured sought monetary damages. In Count II, Insured alleged that it and Insurer, through their respective agents, had agreed to a settlement for the damage at Parkwood Place from the April 10, 2001, storm, and that Insured had performed all conditions precedent. Insured further alleged that it demanded payment and Insurer refused this demand on October 15, 2001, resulting in damages of $873,399.60,

as well as additional damages for emergency repairs made during the vexatious refusal to pay this claim by Insurer, and Insured sought monetary damages for this total amount. Insured also claimed that Insurer's refusal to pay was unreasonable and vexatious. Count III of Insured's petition was for declaratory judgment of the scope of the insurance policies between Insured and Insurer for Twill Manor and Parkwood Place, and requested that the trial court declare that Insurer had a duty to repair Insured's buildings, for costs of the litigation, and for any other relief that the trial court deemed just and proper.

Insurer filed an answer that raised a number of affirmative defenses, as well as a counterclaim for declaratory judgment, which was amended. As its first affirmative defense, Insurer contended that Counts I, II, and III of Insured's petition failed to state a claim upon which relief could be granted. For its second affirmative defense, Insurer asserted that neither Allmark nor its employee Kannall had any implied or express authority to enter into "agreements" with Insured and had no authority to bind it. In its third affirmative defense, Insurer stated that Insured was barred from recovery because it intentionally concealed and/or misrepresented material facts about the claimed losses, and thereby breached the contracts of insurance. As its fourth affirmative defense, Insured averred that Insured is barred from recovery for claimed losses because it failed to permit Insurer to inspect the properties sufficiently, failed to cooperate with it in the investigation and settlement of the claims, and filed the lawsuit without fully complying with the terms of the insurance policies. In its fifth affirmative defense, Insurer stated that Insured is barred from recovery for the claimed losses because Insured is seeking recovery for losses due to the age of the properties and the failure to maintain the properties,

which are not covered under the policies. As part of its fifth affirmative defense, Insurer also alleged that Insured is barred from recovery because "the alleged damages" were a pre-existing condition and not a covered loss.

In its amended counterclaim, Insurer alleged that during its investigation of the claims, Insured concealed and/or misrepresented material facts about the claims, thereby breaching the policies. Insurer further alleged that it had no knowledge of the falsity of Insured's representations and reasonably relied on these representations, thereby proximately causing damage to Insurer. Insurer also averred that Insured was also barred from recovery for the claimed losses under the policies because Insured was seeking recovery for losses due to age and condition of the property and the failure to maintain the property, which are not covered under the policies. Insurer additionally claimed that Insured is barred from recovery for the claimed losses because the "alleged" damages to the properties were pre-existing conditions, and therefore not covered losses under the policies. Insurer also alleged that during its investigation of the claims, Insured refused to let it onto the properties to investigate the damages, filed suit prior to fully complying with all of the contractual conditions of the policies, and "otherwise failed to cooperate" with its investigation of the claims, thereby breaching the conditions of the policies.

Insurer also alleged that it has sustained damage as a result of Insured's breach of the conditions of the policies and fraud because it has incurred substantial expenses for claim response and investigation. It averred that Insured "committed misrepresentation, concealment or fraud and/or engaged in such conduct in the presentation of this loss claim[,]" noting that such actions are recognized as "spe-

cial circumstances" in Missouri that may entitle a prevailing party in a declaratory judgment action to recover costs and expenses, including attorneys' fees. Insurer asked the trial court to declare that: 1) no coverage exists under the insurance policies; 2) that Insured breached the conditions of the policies recited in the petition; 3) that Insurer is not liable at all for any claim made by Insured; 4) that Insured "intentionally misrepresented and/or concealed material facts and circumstances regarding the claimed losses[;]" 5) that Insurer is entitled to recover all sums previously paid to Insured or on its behalf, and costs and expenses, including attorneys fees; and 6) that Insurer is entitled such further relief as the court deems proper.

A jury trial was held in October 2005, taking over a week to complete. Both sides presented considerable amounts of testimony, documents, and photos. The jury returned verdicts in favor of Insurer on Insured's claims. The jury returned verdicts in favor of Insured on Insurer's counterclaims that the claimed damage to Twill Manor and Parkwood Place resulted from wear and tear or deterioration over time or from "faulty, inadequate or defective design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; materials used in repair, construction, renovation or remodeling; or maintenance; of part or all of any property on or off the described premises[.]" The jury also returned a verdict in favor of Insured on

Insurer's counterclaim that Insured, "their agents, owners, employees, or representative, ... committed fraud, intentionally concealed or misrepresented any material fact or circumstance" relating to Twill Manor, Parkwood Place, or the insurance claims thereto. The jury also returned a verdict in favor of Insured on the counterclaim that it failed to cooperate with Insurer in the investigation of the claims. The jury did return verdicts in favor of Insurer on its counterclaim that Insured brought the lawsuit against Insurer without fully complying with all of the terms of the insurance policies for Twill Manor and Parkwood Place, but did not award any damages.

Both parties filed memoranda of law regarding Insurer's request for attorneys' fees and costs. The trial court issued a judgment January 20, 2006. Much of this judgment is devoted to a discussion of Goralnik's alleged "fraud" in obtaining a loan and title insurance in 2003 from third parties unrelated to the insurance dispute between Insured and Insurer. The alleged "fraud" consisted of Goralnik's failure to state in an affidavit made on February 20, 2003, that he was involved in the instant lawsuit, which had been filed in 2002.[1] The trial court, without benefit of a criminal trial, proceeded to find that Goralnik made a false statement involving a loan application "in violation of Title 18, United States Code Section 1014" and made a false affidavit in violation of section 575.050 RSMo, and "may have also violated Title

---

**1.** In an affidavit attached to Insured's posttrial motion to alter or amend the judgment, Kent A. Rawizza, Senior Vice President of Eagle Bank & Trust Company of Missouri, stated that he had been aware of the lawsuit between Insured and Insurer and had discussed it with Goralnik and Robert Wright, Goralnik's accountant, when considering the loan application and line of credit involved in Goralnik's alleged "fraud." Rawizza stated

further that he had discussed with either Wright, Goralnik, or both, his belief that the lawsuit would not have any affect on the loan or line of credit. He averred that Eagle Bank's decision to offer the loan and line of credit was based on its "usual and customary criteria[.]" Rawizza also stated that his bank had twice renewed the line of credit with full knowledge of the litigation between Insured and Insurer.

18, United States Code, Section 1344 for bank fraud." The trial court proceeded to find that special circumstances existed in the present case that merited an award of attorneys' fees and expenses to Insurer, stating as follows:

Looking at the totality of the circumstances, all of the evidence and testimony presented in this case, this Court finds the following special circumstances: (1) the natural and proximate cause of [Insured]'s breach of policy conditions was to involve [Insurer] in this litigation which entitles [Insurer] to costs, expenses and reasonable attorneys' fees necessarily and in good faith incurred in protecting itself from the injurious consequence of this litigation; and (2) [Goralnik]'s intentional misconduct and fraud involving the false statements and affidavit concerning the $6,700,000 loan and line of credit; and (3) various other instances of conduct warranting a finding of special circumstances in this case.

The trial court found that Insurer incurred $389,740.91 for reasonable attorneys' fees and expenses. The trial court entered judgment in favor of Insurer on Insured's claims, in favor of Insurer and against Insured on the counterclaim "due to [Insured]'s failure to fully comply with all of the terms of the insurance policy; and judgment awarding Insurer $389,740.91 for its attorneys' fees and expenses against Insured, jointly and severally."

Insured now appeals from this judgment.

■ To facilitate our analysis, we will address Insured's points relied on out of order. In its fifth point relied on, Insured argues that the trial court erred in submitting Insurer's Instruction No. 10 on apparent agency, and in refusing its proposed Instruction C on agency. Insured claims that Instruction No. 10 misstated the law,

"in that it erroneously advised the jury that it had to find that [Insurer]'s adjuster, Kannall, engaged in conduct that led [Insured] to believe that he had authority to bind [Insurer] and that [Insurer] knew or had reason to know of this misleading conduct[.]" Insured contends that the correct standard under *Curtis v. Indemnity Co. of America*, 327 Mo. 350, 37 S.W.2d 616 (Mo.1931), is that such authority is presumed unless the insured has been informed of limitations to the authority of the adjustor.

Instruction No. 10 read as follows:

Allmark independent adjuster Robert Kannall's acts in connection with the adjustment of the loss bind Defendant United Fire & Casualty Company to a settlement of the claim if:

First, the conduct of Robert Kannall was such that an ordinarily careful person would believe that Robert Kannall had authority to settle claims on behalf of Defendant United Fire & Casualty Company; and

Second, Defendant United Fire & Casualty Company knew or had reason to know of such conduct and allowed such conduct; and

Third, Plaintiffs and/or Plaintiffs' agents reasonably relied on such conduct of Robert Kannall at the time of the transaction mentioned in the evidence.

This instruction follows the language of MAI 13.07(2) on apparent authority.

We review whether a jury has been instructed properly *de novo*. *Syn, Inc. v. Beebe*, 200 S.W.3d 122, 128 (Mo.App.2006). We determine whether the instruction is supported by substantial evidence, viewing the evidence in the light most favorable to the instruction and we disregard contrary evidence. *Id*. We will reverse for instructional error only where the instruction misdirected, misled, or otherwise confused

the jury and resulted in prejudicial error. *McBryde v. Ritenour School District,* 207 S.W.3d 162, 168 (Mo.App.2006).

■ Rule 70.02(b) requires the use of the Missouri Approved Instructions whenever an approved instruction is applicable. *Beebe,* 200 S.W.3d at 128. The use of an MAI instruction is mandatory where such instruction is applicable to the case. *Id.* " 'MAI instructions, promulgated and approved by the Supreme Court, are authoritative if applicable to the factual situation ... this court, as well as the trial court, is bound by them as surely as it is bound by Supreme Court cases and rules.' " *Id.* (quoting *Lindsay v. McMilian,* 649 S.W.2d 491, 493–94 (Mo.App.1983)). To require that the trial court give a non-MAI instruction, a party has to prove that the MAI instruction submitted to the jury misstates the law. *McBryde,* 207 S.W.3d at 168.

MAI 13.07(2) is applicable to the situation in this case; the question is whether it misstates the law in such a fashion that it misdirected, misled, or confused the jury and resulted in prejudice to Insured. Insured contends that Instruction No. 10 misstated the law as set forth in *Curtis,* 327 Mo. 350, 37 S.W.2d 616. Insured asserts that *Curtis* stands for the proposition that there is a presumption that an adjuster has the authority to adjust a claim, settle it, and bind the insurer, which can be rebutted by showing that an insured has been informed of any limitations on an adjuster's authority.

We note that *Curtis* does not specifically address the situation where the adjuster is actually an independent adjuster. Given that caveat, the Missouri Supreme Court held that the insured did not have to plead and prove affirmatively that the insurer's adjuster had authority to settle with the insured and to bind the insurer, but that the adjuster's authority "as the representative and agent of the defendant insurance company ... may properly and reasonably be inferred from all the facts and circumstances in evidence." *Curtis,* 37 S.W.2d at 624. The Missouri Supreme Court went on to add that it was well-settled that "the adjuster of a fire insurance company, as to the settlement of losses, is the representative of the company, and his acts, **within the apparent scope of his authority,** are the acts of the company, and binding upon it." *Id.* (Emphasis added). In essence, *Curtis* said the facts and circumstances in a case can properly create a reasonable inference that an adjuster had the authority to adjust, settle, and bind the insurer. However, the acts of the adjuster must be within the apparent scope of his authority.

An adjuster still has to be acting within the scope of his actual or apparent authority, and this is a submissible issue for a jury. *See Galemore Motor Co., Inc. v. State Farm Mutual Auto. Insurance Co.,* 513 S.W.2d 161, 168 (Mo.App.1974). MAI 13.07(2) defines "apparent authority" and is applicable to the case at hand. Instruction No. 10 was proper.[2]

■ Insured, however, also argues that this instruction misled or confused the jury because it gave a definition, but there was no verdict directing instruction that accompanied it. We note that Insured raises this issue for the first time on appeal, as it did not object at trial or in its motion for a new trial on this basis. We do not reach

---

2. We note that Kannall testified in his deposition that as an independent adjuster it is ordinarily implied that he would not have the power to settle claims, as an independent adjuster is not a direct employee of the insurer, "but more of a hired appraiser of the damages." He also stated that he had worked with Anderson Roofing in the past, and that Anderson Roofing was aware that he was an independent adjuster.

the merits of this particular argument because Insured did not preserve this allegation of error.

■ In order to preserve a claim of instructional error for review, a party must make specific objections to the instruction at trial, and renew it in the motion for a new trial. *Goede v. Aerojet General Corp.,* 143 S.W.3d 14, 28 (Mo.App. 2004). *See* Rule 70.03. A general objection is not sufficient to preserve error. Rule 70.03; *Beebe,* 200 S.W.3d at 135. The trial court cannot avoid error or make an intelligent ruling on the issue unless specific objections are made at trial, and we will not convict a trial court of error on an issue that it had no chance to decide. *Beebe,* 200 S.W.3d at 135. In addition, a point on appeal may not enlarge or change the objection made at trial. *Id.* "'Where an alleged error relating to an instruction differs from the objections made to the trial court, the error may not be reviewed on appeal.'" *Id.* (quoting *Seidel v. Gordon A. Gundaker Real Estate Co.,* 904 S.W.2d 357, 364 (Mo.App.1995)). Errors not preserved on appeal may be reviewed for plain error at the appellate court's discretion, however appellate courts seldom grant plain error review in civil cases. *Id.* We decline to do so here. Point denied.

■ In its second, third, and fourth points relied on, Insured contends essentially that the trial court erred in awarding attorneys' fees and expenses to Insurer because there were no "special circumstances" that would justify such an award under section 527.100. The award of attorneys' fees is left to the trial court's broad discretion, and will not be overturned save for an abuse of that discretion. *Windsor Insurance Co. v. Lucas,* 24 S.W.3d 151, 156 (Mo.App.2000). Missouri has adopted the American Rule that litigants bear the expense of the own attorneys' fees, absent contractual agreement to the contrary or statutory authorization. *Scott v. Blue Springs Ford Sales, Inc.,* 215 S.W.3d 145, 166 (Mo.App.2006). There are a few limited exceptions to the American Rule, which include cases where the proximate result of a breach of duty is to involve the wronged party in collateral litigation, and cases where reimbursement of a party's attorneys' fees is done as an equitable balancing of the benefits. *See id.; Wyper v. Camden County,* 160 S.W.3d 850, 854 (Mo.App.2005). In an action under the Declaratory Judgment Act, attorneys' fees may sometimes be recovered as "costs" if there are "special circumstances." *Windsor Insurance Co. v. Lucas,* 24 S.W.3d 151, 156 (Mo.App.2000). However, this "special circumstances" exception is narrow and must be construed strictly. *Id.*

■ In its second point relied on, Insured contends that the alleged fraud in his application for a loan that is unrelated to the dispute between it and Insurer does not constitute "special circumstances" that justify the award of attorneys' fees and expenses. As Insured notes, the alleged intentional misconduct upon which the trial court relies occurred approximately two years after the hail storm of April 10, 2001, over a year after the lawsuit was first filed by Insured, and is irrelevant to the issues of this case, save for casting doubt on the credibility of Goralnik. The jury in this case rejected Insurer's claim that Insured committed fraud, intentionally concealed or misrepresented any material fact relating to Insured's property or the insurance claims. Assuming that Goralnik's affidavit was intentional misconduct, it did not impact the case presently before us and did not cause Insurer to incur any additional expenses or attorneys' fees. Insurer cites no precedent to support its contention that such unrelated activity, whether criminal or not, constitutes "special circumstances" that would justify a trial court awarding

attorneys' fees and expenses, whether as "costs" or otherwise. In all of the cases cited by Insurer, the intentional misconduct directly damaged the party seeking attorneys' fees and resulted in litigation expenses. *See Kelly v. Golden,* 352 F.3d 344 (8th Cir.2003); *Wiles v. Capitol Indemnity Corp.,* 204 F.Supp.2d 1207 (E.D.Mo.2002); *Allstate Insurance Company v. Estes,* 118 F.Supp.2d 968 (E.D.Mo. 2000); *Employers Mutual Casualty v. Tavernaro,* 21 F.Supp.2d 1039 (E.D.Mo. 1998); *Goellner v. Goellner Printing,* 226 S.W.3d 176 (Mo.App.2007); *Wilmescherr,* 58 S.W.3d at 901; *Temple Stephens Co. v. Westenhaver,* 776 S.W.2d 438, 443 (Mo. App.1989).

Insurer cites *Grewell v. State Farm Mutual Auto. Insurance Co.,* 162 S.W.3d 503 (Mo.App.2005), for the proposition that "special circumstances" can arise in a variety of circumstances, including where a party's conduct is "frivolous, without substantial legal grounds, reckless or punitive." *Id. (citing David Ranken, Jr. Technical Institute v. Boykins,* 816 S.W.2d 189, 193 (Mo. banc 1991) *(overruled on other grounds, Alumax Foils, Inc. v. City of St. Louis,* 939 S.W.2d 907, 911 (Mo. banc 1997)). *Grewell* is also distinguishable from the present case.

In *Grewell,* the insurer failed to comply with the mandate of the Missouri Supreme Court in a prior declaratory judgment action that required the insurer to provide the insured with "free and open access" to the insured's claims file with the insurer. *Id.* at 505–08. The insurer's contention that its claims files were protected work product was rejected in that prior litigation. *Id.* at 507. Following the Missouri Supreme Court's remand of the initial litigation, the insurer allowed the insured access to the entire file, but refused to make copies of portions of it, claiming that it was protected work product. *Id.* at 505–06.

The insured was compelled to file an additional declaratory judgment action against insurer to gain copies of that material, and sought attorneys' fees. *Id.* at 506–08. The trial court granted summary judgment in favor of the insurer on the claim for attorneys' fees. *Id.* at 506

The appellate court in *Grewell* reversed the trial court's grant of summary judgment in favor of the insurer, holding that there were sufficient facts to create genuine disputes regarding the existence of special circumstances and as to whether punitive damages should be awarded. *Id.* at 506–09. It did not hold that there were "special circumstances" as a matter of law that would justify awarding attorneys' fees. We further note that in deciding that there were facts sufficient to create a genuine dispute, the appellate court looked at several matters. These included the insurer's refusal to comply with the Missouri Supreme Court's mandate to provide "free and open access" and provide copies of material from the claims file. *Id.* The appellate court also considered the insurer's actions in asserting a privilege that had been asserted and denied by the Missouri Supreme Court, and which also would have been waived by allowing the insured to review the entire file. *Id.* The appellate court also noted that the fact that the breach of the insurer's duty to provide "unimpeded access" to the claims file based on the protected relationship between insured and insurer, "necessitated an *amended* declaratory judgment action" to affirm the insured's right to full disclosure of the contents of the claims file. *Id.* at 507–08. It held that this provided "additional support for the attorney's fee claim based on special circumstances." *Id.* at 508.

In *Ranken,* a case cited by the *Grewell* court, the Missouri Supreme Court did not actually hold that conduct that is "frivo-

lous, without substantial legal grounds, reckless, or punitive" may give rise to special circumstances that would merit awarding attorneys' fees in a declaratory judgment action. Rather, the respondent Ranken in that case, which had received attorneys' fees in its declaratory judgment action, claimed that there were unusual circumstances that justified an award of attorneys' fees " 'because of appellant's reckless and punitive assessment of a license fee.... ' " *Ranken*, 816 S.W.2d at 193. The Missouri Supreme Court held that the assessment was not frivolous and not without substantial legal grounds, that there was "no evidence that this was a reckless and punitive assessment of a license tax." *Id.* It did not actually hold that a claim that a "reckless and punitive assessment of a license fee[,]" if proven, constituted special circumstances that would justify awarding attorneys' fees. The Missouri Supreme Court observed that Missouri courts "have very rarely found the very unusual circumstances that permit the award of attorneys' fees" in the absence of statute or contract, and listed numerous examples where such claims were denied.

> Such fees have been denied in cases of an improper tax assessment, when a defendant tendered a check on insufficient funds with an intent to defraud, when defendants tortiously conspired and threatened to wrongfully foreclose on notes and deeds of trust, and when defendants fraudulently concealed the existence of an outstanding deed of trust on a house. Such fees have more often been approved where paid out of a *res* and the litigation was designed to benefit the *res* or give direction to the management or distribution thereof. More recent cases have recognized that attorneys' fees may be allowed where the natural and proximate result of a breach

of duty is to involve the wronged party in collateral litigation.

*Id.* (internal citations omitted). We hold that the false statement in a loan application to an unrelated third party, which did not directly or indirectly damage Insurer or result in increased litigation costs, does not constitute special circumstances that would justify awarding attorneys' fees and expenses.

 Insured in its third point relied on contends that the trial court erred in awarding attorneys' fees and costs to Insurer on the basis that the "natural and proximate result of [Insured's] breach of policy conditions was to involve [Insurer] in this litigation[,]" because ordinary litigation does not constitute "special circumstances" and the attorneys' fees and expenses awarded to Insurer were not incurred in collateral litigation. Insurer states that involvement in collateral litigation is a basis for a party to recover attorneys' fees in Missouri, quoting from *Ohlendorf v. Feinstein*, 697 S.W.2d 553, 556 (Mo.App.1985). This is correct. However, as this Court held in that same case, "[c]ollateral litigation occurs when a person breaches a contract causing one of the other contracting parties to sue or be sued by an outside third party." *Id.* We recently reaffirmed the collateral litigation exception in *Auto–Owners Insurance Company v. Ennulat*, 231 S.W.3d 297, 307 (Mo.App.2007), holding that this exception permits a plaintiff in a case alleging a breach of duty against a defendant to recover the attorneys' fees that the plaintiff expended to defend a " '**different and collateral action brought by a third party** ....' " (emphasis in original) (quoting *City of Cottleville v. St. Charles County*, 91 S.W.3d 148, 151 (Mo.App.2002)). In other words, for the collateral litigation exception to be applicable, the plaintiff has

to have incurred attorneys' fees in a different cause of action, defending against a different third party, caused by a breach of duty by the defendant. This Court held in *Ennulat* that where the attorneys' fees that the plaintiff sought to recover were expended in connection with the litigation with the defendant rather than as a result of different litigation with a third party, the collateral litigation exception was inapplicable. *Id.* The attorneys' fees and expenses that the trial court awarded to Insurer were incurred in the same litigation with the same parties. Accordingly the collateral litigation exception is inapplicable as a basis for awarding attorneys' fees and expenses.

Insurer asserts that the collateral litigation exception does not, in fact, apply only where there the attorneys' fees are expended in different litigation where a third party has sued the plaintiff, citing *Grewell,* 162 S.W.3d at 507–08, a case decided by the Western District prior to our decision in *Ennulat.* However, we note that the appellate court in that case did not actually hold that the collateral litigation exception applied to recover attorneys' fees in the same cause of action between the same parties. The court in *Grewell* said that:

> As discussed in *Ranken,* special circumstances can also arise when the breach of a legal duty causes the wronged party to become involved in collateral litigation. 816 S.W.2d at 193. Based on the nature of the protected relationship between the insurer and insured, State Farm had a duty to provide the Grewells unimpeded access to the claims file. The breach of that duty necessitated an *amended* declaratory judgment action to affirm the Grewells' right to full disclosure of all documents in the file. These facts provide additional support for the attorney's fee claim based on special circumstances.

*Id.* (Emphasis in original). All that the appellate court held in that case was that summary judgment on the issue of attorneys' fees was improper because there were facts that created a genuine dispute regarding the existence of special circumstances. According to the appellate court, the fact that the Grewells had to engage in further litigation proceedings by amending its petition, in addition to the evidence supporting the Grewell's allegation that the insurer's actions were in bad faith, was sufficient to preclude the grant of summary judgment.

Insured contends in its fourth point relied on that the trial court erred in awarding attorneys' fees and costs to Insurer on the basis that there were "various other instances of conduct warranting a finding of special circumstances in this case" because the trial court never identified what these instances of conduct were, or how this alleged conduct met the requirement of "special circumstances" and that there were no such "special circumstances."

█ A bare conclusion that various unspecified conduct constitutes "special circumstances" that justifies awarding a party nearly $400,000 in attorneys' fees and expenses, with no evidence to support such a conclusion, is not sustainable on appeal. It is an abuse of discretion on the part of the trial court. Insurer asserts that the trial court had the authority to award attorneys' fees and costs to it on the basis that this was an equitable balancing of the benefits.

█ We note that attorneys' fees may be awarded through a trial court's equitable balancing of the benefits. However, such an equitable balancing of the benefits is allowable only in "very unusual circumstances[,]" which Missouri courts have construed to mean unusual types of cases or extremely complicated cases. *Wyper,* 160 S.W.3d at 854. This is not

such a case. Further, the equitable concept of balancing the benefits is not applicable to an action that does not involve the equitable jurisdiction of the trial court, and so this basis for awarding attorneys' fees would be inapplicable. *See 66, Inc. v. Crestwood Commons Redevelopment Corp.,* 130 S.W.3d 573, 594–95 (Mo.App. 2003). Insurer contends that the current case is an unusual lawsuit that would justify an equitable balancing of the benefits. We disagree. This was essentially a breach of contract action, and not an unusual or extremely complicated case that would warrant an exception to the American Rule.

The trial court abused its discretion in awarding attorneys' fees to Insurer. Accordingly, we sustain Insured's second, third, and fourth points relied on. Having sustained these points, we need not address Insured's first point relied on, which also addressed the award of attorneys' fees and expenses.

The judgment of the trial court is affirmed as to the verdicts in favor of Insurer on Insured's claims, and reversed as to the award of attorneys' fees and expenses to Insurer.